UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| FRANCES SKAGGS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 15-51-ART |
| | ) | |
| v. | ) | |
| | ) | |
| EXTENDICARE HOMES, INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Extendicare Homes, Inc. ("Extendicare"), has a policy of terminating any employee who exhausts his or her Family and Medical Leave Act ("FMLA") time and does not return to work. Frances Skaggs is one of those employees. Skaggs, however, believes that Extendicare fired her because she had expressed concerns about the care that Extendicare was providing to its residents. Because Skaggs cannot show that her reports were causally connected to her termination, Extendicare's motion for summary judgment, R. 24, must be granted.

## BACKGROUND

Frances Skaggs worked as a referral manager for Extendicare, a residential care facility. R. 1-3 ¶¶ 6–7. In April 2011, Skaggs took a leave of absence from work under the FMLA, which allows covered employees up to twelve weeks of leave. R. 25 at 1; 29 U.S.C. § 2612. Skaggs took this leave immediately following an incident at work where her supervisors at Extendicare confronted her about alleged performance deficiencies. R. 24-1 at 73. Although Skaggs admits that no one told her during this meeting that she was fired,

she nevertheless maintains that she believed at the time that Extendicare was firing her. R. 24-1 at 75.  Skaggs became distraught, saw a psychiatrist, and requested FMLA leave—which Extendicare approved.  *Id.* at 86–92.  Following the end of the twelve weeks of leave, Skaggs did not return to work.  *Id.* at 99.  Instead, she submitted a letter from her doctor stating that she "[was] not able to function in her previous employment position at this time." R. 29-4 at 109.

On July 28, 2011—two days after the 12-week period had ended—Extendicare terminated her because she had used the entirety of her FMLA time, and she did not return to work at the end of this leave.  R. 1-3 ¶ 8, 10; R. 24-3 at 72.  This action was, according to Extendicare, in line with its policy providing that any employee would be automatically terminated if she failed to return to work after she had exhausted her twelve weeks of FMLA leave.  R. 25 at 2; R. 24-4 at 33.

But Skaggs says that Extendicare actually fired her because she repeatedly reported problems with "the quality of care and safety of [the] residents/patients" at the Extendicare facility where she worked.  R. 1-3 at 5.  Skaggs interacted frequently with patients, and "any time a patient came to [her] with a concern, . . . no matter how small or how large," Skaggs would verbally pass the concern along to the administrator, Sharon Welch.  *Id.* at 55.  Skaggs says that when she made these reports, Welch "would just get very upset with [her]."  R. 24-1 at 132.  According to Skaggs, Welch got upset at her "at least weekly."  *Id.* at 133.  Skaggs does not, however, claim that any Extendicare employee ever told her to stop reporting her concerns or threatened her employment if she continued reporting.  *See generally id.*; R. 1-3. To the contrary, Extendicare had a policy in place requiring employees to report any incident

2

that they witnessed.  R. 24-2 at 31 ("Failure to report incidents . . . may result in employee discipline.").

On November 24, 2014, Skaggs filed suit against Extendicare in Kentucky state court, alleging that Extendicare violated two Kentucky laws.  R. 1-3 at 2–9.  The first is Kentucky Revised Statute ("KRS") § 216B.165, which prohibits a health facility from using "any authority or influence" to "discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate" against any employee who reports concerns about patient care and safety."[1]  Ky. Rev. Stat. § 216B.165(3).  R. 1-3 at 5.  It also states that a facility may not "subject [an employee] to reprisal" for making a report.  *Id.*  The second law Skaggs claims Extendicare violated is KRS § 205.8465, which prevents health care facilities from retaliating against employees for reporting Medicaid violations.  Ky. Rev. Stat. § 205.8465. Extendicare removed the case to this Court, R. 1, and now moves for summary judgment. R. 24; R. 25.  For the reasons that follow, the Court will grant that motion.

## DISCUSSION

"Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)).  The party that moves for summary judgment must identify the portion of the record which demonstrates the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party has made this showing, the non-moving party bears the

---

[1] This statute does not create an individual cause of action.  Skaggs may bring civil suit under this statute, however, based on KRS 446.070, which provides a civil remedy for any person injured by a violation of any statute.

burden of "showing that there is a genuine issue for trial." *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). To do so, she must present "significant probative evidence . . . on which a reasonable jury could return a verdict" in her favor. *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009) (citations omitted).

When a plaintiff alleges that her employer wrongfully terminated her for engaging in legally protected activity, she must show among other things "a causal connection between the 'protected activity' and the discharge." *Mitchell v. Coldstream Labs., Inc.*, 337 S.W.3d. 642, 645 (Ky. App. 2010) (quoting *Follett v. Gateway Reg'l Health Sys., Inc.*, 229 S.W.3d 925 (Ky. App. 2007)). Specifically, she must show that she would not have been fired if she had not engaged in the protected activity. *First Prop. Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993) (requiring proof of "but for" causation). Thus, the general question presented in cases like this one is whether—after drawing all inferences in the plaintiff's favor—a reasonable jury could find that she would not have been fired if she had not reported her concerns.

Under the facts of this particular case, however, it is possible to frame the question a bit more specifically. After all, both parties here agree that Extendicare had a formal FMLA leave policy. R. 24-2 at 28–29; R. 24-1 at 24; R. 24-3 at 15–16. Both parties further agree about the substance of that policy: "an employee who fails to return to work after the expiration of an approved FMLA leave will be considered to have voluntarily terminated employment" unless a longer absence "has been approved in writing." R. 24-2 at 28–29; *see also* R. 24-1 at 24; R. 24-3 at 15–16.[2] And both parties agree that Skaggs failed to return to

---

[2] Skaggs does not allege that she ever requested an extension of her leave. Although Skaggs did email Extendicare towards the end of her leave to inform them that she "[was] not voluntarily resigning," this letter contained no

work after her leave time was up.  R. 30 at 20.  Thus, the real question presented here is as follows: after drawing all inferences in Skaggs's favor, could a reasonable jury find that Extendicare would have *waived* its policy if only Skaggs had not raised her concerns?

Everything in the record suggests that the answer to that question is "no."  There is simply no evidence that Extendicare would have—or even might have—made an exception in Skaggs's case if she had not complained.  Skaggs has offered no evidence that Extendicare ever waived its leave policy for any employee in this situation—not a single one—nor could she could name a single employee who had been allowed to take more than twelve weeks leave.  R. 24-1 at 102; *see generally* R. 30.  And meanwhile Extendicare introduced affirmative evidence that it enforced its leave policy uniformly and with no exceptions. R. 24-3 at 16; R. 24-4 at 33.[3]  For example, Kathy Head, the Area Director of Human Resources for Extendicare, testified that this policy "appl[ied] across the board uniformly to all the employees who were in [the] situation."  R. 24-4 at 33.  When asked if it was important for her to know whether Skaggs had made any reports before her termination, Head responded "not in this circumstance" because "we treated everybody the same . . . [w]hen your 12 weeks [were] up."  R. 24-4 at 54.  Thus, it is hard to see how a reasonable

_____

request that Extendicare extend Skaggs's leave.  R. 24-4 at 73.  The same holds true for the letter that Skaggs had her psychiatrist, Dr. Edwards, send to Extendicare on her behalf.  R. 24-2 at 60.

[3] Extendicare's uniform enforcement of its FMLA policy makes sense.  Extendicare provides long-term care to residents, and it needs a full staff to ensure it can provide quality care for these residents.  The form letter that Head created to send to all employees in the same situation as Skaggs says as much.  R. 24-4 at 30, 25, 74, 76.  This letter informs the employee that because the "position is very important to [Extendicare's] residents," Extendicare would need to fill it immediately.  R. 24-4 at 76.  Before her termination, Skaggs received this form letter, explaining that Extendicare would enforce its FMLA leave policy against her because it was important that they fill the Referral Manager position immediately.  *Id.*  There is no evidence to suggest that anything other than the importance of the policy and concerns about consistent enforcement motivated Extendicare to terminate Skaggs.

jury could find that Extendicare would have made an exception for Skaggs if only she had stayed quiet at work.

In response, Skaggs contends that a reasonable jury could nevertheless find that Extendicare did not enforce its policy uniformly.  First, she points to an email in which Welch asked an Extendicare executive "[w]hat do we do?" about Skaggs's situation.  In Skaggs's view, this email shows that Welch had "discretion" to enforce the policy or instead decline to do so.  After drawing all inferences about this email in Skaggs's favor, the argument seems to go, a reasonably jury could conclude that Extendicare would not have fired Skaggs but for her decision to report her concerns.

It is true that courts must draw all inferences in favor of the non-moving party when deciding a motion for summary judgment.  And it is likewise true that a jury might reasonably draw several inferences from this particular email.  A jury might infer, for example, that Welch wanted guidance from her supervisor, that Welch did not have total mastery of the company's policies, or that Welch needed approval from the higher-ups before terminating Skaggs formally.  There might be other reasonable inferences as well. What would be totally *un*reasonable to infer from that email, however, is that Extendicare had not enforced its policy uniformly or that Extendicare would have made an exception to its policy if only Skaggs had not complained.  The email simply tells us nothing about those issues.  That means it provides no basis on which to deny summary judgment.

Second, Skaggs points to another email.  In this one, Head told Cynthia Simpson, the Regional Director of Operations at Extendicare, to "tailor" the form letter that the company used to inform employees about the policy.  Specifically, Head told Simpson to "tailor" it "to fit [Skaggs's] situation provided she used her 12 weeks of [FMLA] leave."  *Id.* at 71.

6

According to Skaggs, the fact that Simpson could "tailor" the form letter shows that Extendicare did not automatically enforce the policy.  R. 30 at 17.

This argument misunderstands the nature of a form letter.  Head testified that she had created the form letter, based on the FMLA leave policy, to send to all employees who had exhausted their FMLA leave and not indicated when they would return to work.  R. 24-4 at 30, 35.  One of the benefits of such a form letter is that it, by its nature, allows for uniform, consistent treatment of employees in similar situations.  Obviously, some of the information on the form letter—such as the dates and names—must be changed to fit the specific individual to which the letter is being sent.  It was this information that Welch changed when she followed the instructions to "tailor" the form letter.  *See id.* at 35, 74, 76.  These types of administrative alterations, which did not affect the substance of the FMLA policy or the way Extendicare applied it to its employees,[4] do not create a genuine issue as to whether Extendicare uniformly enforced its FMLA leave policy.

In short, Extendicare has offered evidence that it enforced its FMLA leave policy uniformly.  And Skaggs has offered no evidence to suggest that Extendicare ever waived its FMLA leave policy for any employee or that it discriminated against her when it enforced the policy against her.  Without such evidence, Skaggs cannot show that, but for her reports to her supervisors, Extendicare would have waived the leave policy for her.  For this reason, Skaggs cannot establish that her termination is causally connected to her reports, and her claims therefore fail as a matter of law.

---

[4] A form letter is, of course, not a form letter at all if the scrivener is permitted to change the substantive terms.

## CONCLUSION

In summary judgment cases like this one, the question is not what a jury might *conceivably* find—surprising verdicts do occur from time to time—but what a jury could *reasonably* find.  It is of course conceivable that, if this case went to trial, the jury would find in Skaggs's favor.  Given the evidence in the record, however, such a finding could only be based on what the economist Lord John Maynard Keynes called the "animal spirits"— gut reactions, hunches, "bad vibes" and sneaking suspicions—rather than on the evidence itself. The record provides no "reason" to think that Extendicare would have waived its policy if only Skaggs had not complained.  And thus no "reasonable" jury could find that Extendicare would have done that.  Extendicare's motion for summary judgment is therefore granted.

Accordingly, it is **ORDERED** that:

(1)     Extendicare's motion for summary judgment, R. 24, is **GRANTED**.

(2)     Skaggs's complaint, R. 1-3, is **DISMISSED WITH PREJUDICE** with respect to all issues raised in this proceeding.

(3)     This action is **STRICKEN** from the Court's active docket.

(4)     All pending motions are **DENIED AS MOOT** and all hearings are **CANCELLED**.

(5)     A separate judgment shall issue with this Order.

This the 22nd day of March, 2016.



**Signed By:**

*Amul R. Thapar*

**United States District Judge**